1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARETHO OMAR,<br><br>                Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECUIRTY,<br><br>              Defendant. | CASE NO. 2:22-cv-01386-LK<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

This matter comes before the Court on Plaintiff Haretho Omar's appeal for review of the Commissioner of the Social Security Administration's denial of Ms. Omar's application for Supplemental Security Income ("SSI"). Dkt. No. 3. The Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under 42 U.S.C. § 405(g).

## I.   BACKGROUND

Ms. Omar is 49 years old, illiterate, and has no past relevant work. AR 2222. She applied for SSI benefits on December 14, 2010, alleging disability as of January 1, 2002. AR 128, 142.

The Commissioner denied Ms. Omar's application both initially and upon reconsideration. AR 13, 27. Administrative Law Judge ("ALJ") Tom L. Morris held two hearings in November 2014 and February 2015, *see* AR 59–88 (November 2014 hearing), 89–127 (February 2015 hearing), and ultimately found Ms. Omar not disabled in July 2015, AR 21–39. This Court reversed and remanded the ALJ's decision on October 25, 2017. AR 1492–1507. ALJ Morris held a hearing on remand in November 2018, *see* AR 1441–65, and issued a second decision finding Ms. Omar not disabled, *see* AR 1377–1407. The Court again reversed and remanded the ALJ's decision in October 2020 following a stipulation by both parties. AR 2310, 2312–13. ALJ Michael Werner held a hearing on remand in November 2021, *see* AR 2238–75, and issued a third decision in March 2022 finding Ms. Omar not disabled, *see* AR 2208–37. Ms. Omar now seeks judicial review of that March 2022 decision.

## II.   THE ALJ'S DECISION

Under the Social Security Act, courts use a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). Here, the ALJ[1] found the following:

- **Step One:** Ms. Omar has not engaged in substantial gainful activity since December 14, 2010—the date she applied for benefits. AR 2213.

- **Step Two:** Ms. Omar suffers from multiple severe impairments, including post-traumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, dependent personality disorder, gastritis, fibromyalgia, Sjögren's syndrome, and headache disorder. AR 2214–15.

- **Step Three:** Ms. Omar does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 2215–17.

- **Residual Functional Capacity:** Ms. Omar "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can stand and/or

---

[1] References to "the ALJ" going forward refer to ALJ Werner.

walk for a total of only 4 hours per day. [She] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. [She] can occasionally balance, stoop, kneel, crouch, and crawl. [She] can understand, remember, and apply instructions to perform simple tasks. [Ms. Omar] can make work decisions commensurate with those tasks. [She] can concentrate to work at a consistent pace for two-hour periods before and after customary breaks. [She] can tolerate interactions with supervisors and co-workers in jobs that do not require customer service, tandem tasks, sales, money handling, or dispute resolution. [She] can adapt to occasional changes in a work environment with these limitations." AR 2217.

- **Step Four**: Though Ms. Omar has the residual functional capacity ("RFC") to perform light work, she has no past relevant work. AR 2217–22.

- **Step Five:** Considering Ms. Omar's age, education, work experience, and RFC, there are numerous jobs in the national economy that she can perform. AR 2223–24.

The ALJ therefore concluded that Ms. Omar was not disabled. AR 2224. The Appeals Council denied her request for review, thereby making the ALJ's decision the Commissioner's final decision. AR 2192–95.

## III.   DISCUSSION

Ms. Omar contends that the ALJ erred by failing to properly evaluate the medical opinions of her treating physicians and erred on multiple steps of the five-step sequential evaluation. *See* Dkt. No. 11 at 2–18.

This Court may set aside the Commissioner's denial of SSI benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (cleaned up). Thus, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (cleaned up). The ALJ is nonetheless responsible for evaluating evidence, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This means that the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987). When the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. *Ford*, 950 F.3d at 1154. Finally, the Court will not reverse an ALJ's decision on account of harmless error, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up).

**A.      Whether the ALJ Erred in his Evaluation of Certain Opinions**

Ms. Omar argues that the ALJ "failed to provide specific, clear, and convincing reasons" to reject certain opinions in a manner consistent with applicable regulations and previous Court orders. *See* Dkt. No. 11 at 1; *id.* at 2–12. Specifically, Ms. Omar contends that the ALJ erred in his evaluation of the opinions of (1) Certified Physician Assistants ("PA-Cs") Morgina Rao and Anna Varley; (2) Dr. Tsz-Ming Chow, Dr. Diane Bai, and Cathleen Bozek, Advanced Registered Nurse Practitioner ("ARNP")[2]; and (3) treating physicians Dr. Anya Zimberoff and Dr. Brianne Taylor. *Id.* at 3–12.[3]

1.   <u>Anna Varley, PA-C and Morgina Rao, PA-C</u>

Ms. Omar contends that the ALJ erred by failing to consider the opinions of PA-Cs Anna Varley and Morgina Rao. Dkt. No. 11 at 3–5. In October 2010, PA-C Varley indicated that she

---

[2] Ms. Omar refers to ARNP Bozek as "NAVOS providers." ARNP Bozek was the staff member at the Navos Outpatient clinic who provided service to Ms. Omar. *See* AR 737, 1122.

[3] Ms. Omar contends that the ALJ "applied the incorrect law to the case throughout the decision because 20 CFR § 416.927 applies to cases such as this one, . . . not 20 CFR § 416.920." Dkt. No. 11 at 3. For applications such as Ms. Omar's that were filed before March 27, 2017, the ALJ weighs medical opinion evidence according to 20 C.F.R. § 416.927. *See Reeve v. Kijakazi*, No. 22-36018, 2023 WL 7411537, at *2 n.1 (9th Cir. Nov. 9, 2023). That is what the ALJ did here: "The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 416.927." AR 2217. The ALJ was correct in stating that he is required to follow 20 C.F.R. § 416.927 (as opposed to 20 C.F.R. § 416.920c) in his five-step evaluation of Ms. Omar's qualification for benefits. *Id.* at 2212–13.

1    believed that Ms. Omar was unable to participate in Work First because of "chronic abdominal

2    pain" and "frequent vomiting." AR 482–85. In May 2011, PA-C Rao evaluated Ms. Omar for

3    mental and physical ailments and concluded that Ms. Omar could not "hold a job due to [her]

4    multiple debilitating medical and psychiatric problems." AR 661–64.

5        The Commissioner argues that the ALJ's disregard of the physician assistants' opinions

6    does not constitute error because (1) he provided germane reasons for rejecting "equivalent

7    statements" from two other physician assistants; (2) PA-C Rao's opinion that Ms. Omar was

8    unable to hold a job "infringed upon an issue reserved solely for the Commissioner," and (3) PA-

9    C Varley's opinion predates the relevant adjudicatory period and did not address "whether [Ms.

10   Omar] had functional limitations that lasted for twelve months or longer, as the Act requires." Dkt.

11   No. 18 at 11–12.

12       Under the applicable regulations, only "acceptable medical sources" can provide medical

13   opinions, serve as treating sources, and "establish the existence of a medically determinable

14   impairment." *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20

15   C.F.R.  §§ 404.1527(a)(2),  416.927(a)(2),  404.1502,  416.902).  Although  licensed  physician

16   assistants qualify as "acceptable medical sources" for applications filed after March 27, 2017, 20

17   C.F.R. § 404.1502(a)(8), they constitute "other sources" for applications such as Ms. Omar's that

18   were filed earlier, *see* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2. The ALJ may consider

19   "other source" evidence to show the severity of an individual's impairments and how it affects the

20   individual's ability to function, *id.*; 20 C.F.R. § 416.927(f)(1), but may discount or reject such

21   evidence if the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674

22   F.3d 1104, 1111 (9th Cir. 2012) (citations omitted), *superseded on other grounds*, 20 C.F.R.

23   § 404.1502(a); *see also* 20 C.F.R. § 416.927(f)(2) ("The adjudicator generally should explain the

24   weight given to opinions from these sources or otherwise ensure that the discussion of the evidence

in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]").

Here, the ALJ disregarded the opinions of PA-Cs Varley and Rao without explanation. With respect to PA-C Varley, the Court agrees with the Commissioner that any error in rejecting her opinion was harmless. Dkt. No. 18 at 11–12. Varley opined that Omar's conditions were not permanent, and would instead last a period of months. AR 483; *see also* AR 509 (noting that Omar "is unable to participate in Workfirst at this time," and would be reevaluated "in a few months"). Because her opinions did not address whether Omar had functional limitations that lasted for 12 months or longer, the assessed limitations do not meet the Social Security Administration's duration requirement. *See Daniel v. Kijakazi*, No. 1:22-cv-01094-BAM, 2023 WL 5956813, at *8 (E.D. Cal. Sept. 13, 2023) ("Because the limitation did not meet the twelve-month duration requirement, [any] error in addressing the limitation is nonprejudicial and therefore harmless error."); *Salvas v. Berryhill*, No. CV 16-06956-JEM, 2017 WL 3731994, at *4 (C.D. Cal. Aug. 28, 2017) (because limitations did not meet the durational requirement, they are not probative, and "[a]ny failure to give reasons for not adopting these limitations is harmless error"). The Court also observes that Varley's opinions predate the relevant adjudicatory period. *See* AR 482–83, 508–10; *Livier V. v. Berryhill*, No. 5:18-cv-00965-JDE, 2019 WL 1382892, at *6 (C.D. Cal. Mar. 27, 2019) ("Discounting an 'other source' opinion because it predates the alleged disability onset date is a germane reason.").

With respect to PA-C Rao, although "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a . . . nonmedical source depends on the particular facts in each case," 20 C.F.R. § 416.927(f)(1), the ALJ was still required to provide germane reasons for disregarding certain portions of her opinion. It does not suffice that he gave reasons for rejecting the opinions of two other PA-Cs—Jeremy Quinn and Matt

Summers—because his reasons addressed only the portion of their opinions that intruded into issues reserved to the Commissioner, AR 1027, 1221, 2222.[4] PA-C Rao's opinion was not limited to such issues. Though it was harmless error for the Commissioner not to address her opinion that Ms. Omar could not "hold a job due to [her] multiple debilitating medical and psychiatric problems," Rao supported this opinion through assessments of some of those problems, including the "severe osteoporosis" in Ms. Omar's femur. AR 664. In fact, PA-C Rao mentions severe osteoporosis several times, AR 661, 664, 668, 670, advising Ms. Omar to "be very careful," AR 664, and that she "must avoid falling at all costs," AR 668. Rao prescribed a cane to help her "avoid falling" when taking walks. AR 598, 639, 643–44, 648; *see also* AR 642 ("needs assistance walking to the lab"). These opinions are relevant to the ALJ's finding that Omar has the residual functional capacity to stand/walk for four hours in a work environment. AR 2217. While the Commissioner may ultimately conclude that PA-C Rao's opinions are entitled to little weight, the Commissioner still must provide germane reasons for rejecting them.[5]

      2.  <u>Dr. Tsz-Ming Chow, Dr. Diane Bai, and Cathleen Bozek, ARNP</u>

      Ms. Omar also contends that the ALJ erred by ignoring the opinions of Dr. Tsz-Ming Chow, Dr. Diane Bai, and ARNP Cathleen Bozek in his decision. Dkt. No. 11 at 4–7.

      An ALJ must provide "clear and convincing" reasons to reject uncontradicted opinions of

---

[4] It was harmless error for the ALJ not to address similar portions of Varley's and Rao's opinions. Rao opined that Ms. Omar could not "hold a job due to [her] multiple debilitating medical and psychiatric problems," AR 664, and Varley opined that Ms. Omar was unable to participate in work or job search activities, AR 482. Any error in disregarding those opinions was harmless because they improperly intruded into "issues reserved to the Commissioner" and therefore were not due "any special significance." 20 C.F.R. § 416.927(d)(1), (3); *see also Tristan v. Berryhill*, 752 F. App'x 516, 517 (9th Cir. 2019) ("The ALJ properly rejected Dr. Posner's opinion that Tristan was unable to work as an opinion on an issue reserved to the Commissioner."); *Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007) ("[T]he opinion that Martinez is unable to work . . . is an opinion about an issue reserved to the Commissioner.").

[5] Ms. Omar also points out that PA-C Rao described Ms. Omar "as gaunt, chronically ill-appearing, anxious, feel[ing] hopeless, fearful, [and] ha[ving a] deficient fund of knowledge." Dkt. No. 20 at 2 (citing AR 663–64). These, however, are not functional limitations relevant to whether Ms. Omar is disabled.

an examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *superseded on other grounds*, 20 C.F.R. §§ 404, 416. When a treating or examining physician's opinion is contradicted, the ALJ can still reject or discredit that opinion, but only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). "In other words, an ALJ errs when he rejects a medical opinion or assigns little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The Court disagrees with Ms. Omar that the medical treatment notes from Drs. Chow and Bai qualify as "medical opinions" under the applicable regulations. The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). While the records Ms. Omar cites from Dr. Chow and Dr. Bai show that they considered Ms. Omar's medical history, diagnoses, and mental status examinations, they did not include any statements regarding the nature and severity of her impairments or any functional limitations that those impairments caused. *See* AR 486–87, 929, 1119–20. For instance, Ms. Omar notes that Dr. Bai observed that she "appear[ed] quite listless during her visit and [did] not appear to focus well." Dkt. No. 20 at 4 (citing AR 487). These observations, however, cannot necessarily be attributed to any functional limitations without Dr. Bai making such an attribution. Ms. Omar also contends that Dr. Chow observed "a medical basis for [her] chronic headaches which the ALJ failed to consider." *Id.* (citing AR 929). But all Dr. Chow noted at that time (March 2012) was that there was evidence of sinusitis in her MRI, which

1   "need[ed] to be treated first to eliminate secondary cause of headache." AR 929. In sum, neither

2   Dr. Bai's nor Dr. Chow's treatment records qualify as "medical opinions" under the regulations,

3   and thus did not need to be considered.

4          ARNP Bozek's treatment records fare no better. First, ARNP Bozek is not an acceptable

5   medical source. *See Molina*, 674 F.3d at 1111. Again, the ALJ may discount or reject "other

6   source" evidence if the ALJ "gives reasons germane to each [source] for doing so." *Id.* Here,

7   although the ALJ did not mention ARNP Bozek, it did not constitute error. Although Ms. Omar

8   claims that ARNP Bozek "reported symptoms of PTSD including insomnia, nightmares,

9   flashbacks and isolation," as well as "depressed mood, isolation, hopelessness, decrease in appetite

10  and difficulty with concentration and motivation," Dkt. No. 20 at 4 (internal quotation marks

11  removed), none of these observations amounted to judgments about "the nature and severity of

12  [her] impairment(s)" and how they restricted her physically or mentally. 20 C.F.R.

13  § 416.927(a)(1); *Sharp v. Colvin*, No. 2:14-cv-468-EFB, 2015 WL 5601353, at *3 (E.D. Cal. Sept.

14  22, 2015). Nor is it evident from these notes what, if any, impairment ARNP Bozek believed would

15  last for 12 months or longer. Furthermore, Ms. Omar's contention that ARNP Bozek noted that

16  she had "functional limitations due to 'language barrier,' impaired concentration and attention,"

17  lack of clarity as to "how long she has been in the United States," and poor "[i]nsight and

18  judgment" is misleading. Dkt. No. 20 at 4. ARNP Bozek noted no functional limitations based on

19  these observations, and although she wrote that Ms. Omar's "[a]ttention and concentration were

20  impaired," she cautioned that it was "difficult to determine [Ms. Omar's] thought processing due

21  to [the] language barrier." AR 748. Thus, it is not clear from the record whether ARNP Bozek's

22  observations regarding Ms. Omar's lack of clarity and poor insight and judgment, *id.*, are

23  observations about her mental status or instead observations arising from the language barrier. Ms.

24  Omar fails to identify any opinion by ARNP Bozek that could have changed the ALJ's non-

1   disability determination had the ALJ considered it.

2          Therefore, unlike PA-C Rao's opinion (which contained conclusions about Ms. Omar's

3   functional limitations supported by evidence regarding her physical restrictions), Dr. Chow's, Dr.

4   Bai's, and ARNP Bozek's treatment records are ultimately immaterial to the determination of Ms.

5   Omar's benefits and the ALJ was not required to consider them in his decision. *See Kaminski v.*

6   *Kijakazi*, 856 F. App'x 735, 736 (9th Cir. 2021) (finding that the ALJ did not err by not addressing

7   psychiatrists' treatment notes because they offered "no opinion about the severity of [claimant's]

8   mental impairments or any functional limitations that those impairments caused"); *see also*

9   *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (noting that while "an ALJ may not

10  ignore significant probative evidence that bears on the disability analysis," "requiring ALJs to

11  address every argument or piece of evidence, however meritless or immaterial, would unduly

12  detain ALJs in their orderly consideration of Social Security disability benefits claims"). The ALJ

13  therefore did not err in omitting Dr. Chow's, Dr. Bai's, and ARNP Bozek's respective opinions

14  from his decision.

15         3.   Dr. Anya Zimberoff and Dr. Brianne Taylor

16         Ms. Omar last contends that the ALJ erred by assigning little weight to the medical opinions

17  of Dr. Anya Zimberoff and Dr. Brianne Taylor. Dkt. No. 11 at 7–12. The Court agrees that the

18  ALJ's discredit of these opinions was not entirely for "specific and legitimate reasons that are

19  supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31.[6]

20              *(a) Dr. Anya Zimberoff*

21         Between 2011 and 2021, Dr. Zimberoff provided numerous opinions about Ms. Omar's

---

[6] The Commissioner contends that the ALJ needed to provide only "'good' reasons supported by substantial evidence" when rejecting Dr. Zimberoff's and Dr. Taylor's opinions. Dkt. No. 18 at 4. Even if this were the standard (it is not, *see Broughton v. Saul*, No. 2:18-cv-02188-JAD-EJY, 2020 WL 1327401, at *11 n.13 (D. Nev. Mar. 3, 2020), *report and recommendation adopted*, 2020 WL 1324987 (D. Nev. Mar. 20, 2020)), the ALJ fails to meet it for the reasons laid out below.

mental and physical limitations:

- In January 2011, Dr. Zimberoff wrote that Ms. Omar suffers from PTSD, depression, and chronic pain. Because of these impairments, Dr. Zimberoff concluded that Mr. Omar was "unable to be gainfully employed at this time and [was] unlikely to beco[m]e[] employable in the next 24 months[.]" AR 381–82.

- In January 2013, Dr. Zimberoff wrote that Ms. Omar suffers from chronic pain, PTSD, and dependent personality disorder, and again opined that Ms. Omar was "unlikely to able to return to work in the next several years." AR 785–87. Dr. Zimberoff also explained that, based on Ms. Omar's low functional assessment score, Ms. Omar is impaired "in all areas of her life (neglectful as a parent, unable to do household work, unable to work, and difficulty relating to other persons or to maintain friendships)." AR 787.

- In April 2019, Dr. Zimberoff completed a medical certification for Ms. Omar, writing that Ms. Omar has a history of traumatic brain injury and suffers from PTSD, chronic pain, and memory loss. AR 2161–64. Dr. Zimberoff indicated that Ms. Omar's disability has lasted—or is expected to last—twelve months or more. AR 2162.

- In October 2019, Dr. Zimberoff opined that based on Ms. Omar's PTSD, Ms. Omar is generally unable to either meet competitive standards required for work or does not have useful ability to do unskilled, semiskilled, and skilled work. AR 2176–77.

- In November 2019, Dr. Zimberoff stated that Ms. Omar "has been poorly functioning and unable to work" for multiple years and "has required significant help with household tasks[.]" AR 2186. She explained Ms. Omar's "reasons for her disability appear to be a combination of psychiatric . . . and physical," and "[t]he physical origins of her dysfunction began with a presumed traumatic brain injury." AR 2186–87.

- As to Ms. Omar's physical limitations, Dr. Zimberoff opined in May 2021 that, based on Ms. Omar's self-reports, Ms. Omar is significantly limited in lifting, carrying, standing, walking, and sitting. *See* AR 2494–99.

- In December 2021, Dr. Zimberoff stated that, in addition of Ms. Omar's initial diagnoses of depression and chronic pain, "it became clear that [Ms. Omar] also had a Frequent Migraine Disorder, Memory Impairment, and PTSD (diagnosed in 2012)." AR 2749. She further stated that Ms. Omar's disability "has been significant and [Ms. Omar] struggles with even basic activities of daily living tasks." *Id.* Therefore, Dr. Zimberoff concluded that it was "unlikely that Ms. Omar will be able to return to gainful employment or even independent living." *Id.*

The ALJ gave Dr. Zimberoff's opinions little weight because he determined that they were "not consistent with the evidence." AR 2221–22. With respect to some of these opinions, the ALJ erred; with respect to others, he did not.

The ALJ did not err in discounting Dr. Zimberoff's opinion about Ms. Omar's difficulties with social interaction and maintaining friendships as inconsistent with "evidence show[ing] that she has friends" and with Ms. Omar's denial of "having problems getting along with others." AR 2221. To support his conclusion, the ALJ cited to treatment notes from PA-C Summers noting that Ms. Omar brought a "friend" to medical appointments, *see id.* (citing, *inter alia*, AR 788, 861, 1054), and cited to the Cooperative Disability Investigation Unit ("CDIU") report, which recounted that Ms. Omar's son said that she had frequent visits from female friends, and that another witness said she "came out and went to friends' apartments," *id.*; AR 1322. The ALJ therefore identified specific and legitimate reasons supported by substantial evidence to discount Dr. Zimberoff's opinion regarding Ms. Omar's abilities to interact socially and maintain friendships. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (inconsistency with

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 12

claimant's activities is valid reason to discount medical opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where physician's opinions were "inconsistent with the level of activity that [claimant] engaged in").

The ALJ's other reasons for discrediting Dr. Zimberoff's opinions, however, were not similarly grounded. The ALJ gave Dr. Zimberoff's opinion about Ms. Omar's memory and cognitive problems little weight because the record contained "no evidence of a medically determinable traumatic brain injury" and because Dr. Zimberoff "seems to be basing her understanding of the claimant's functioning primarily on the claimants subjective reporting of her activities and abilities." AR 2221–22 (citing AR 2186–87). It is true that Dr. Zimberoff opined that:

> The physical origins of her dysfunction began with a presumed traumatic brain injury from being beaten unconscious during an assault and rape. The brain injury likely caused cognitive problems, memory impairment, and is likely involved in the severe weakness symptoms if there was damage to the relevant brain areas.

AR 2186–87. However, her opinion was based on more than the presumed traumatic brain injury and Ms. Omar's subjective reporting regarding her abilities. Dr. Zimberoff specifically noted that her diagnosis of memory loss was given because "the etiology of the problem is not known but the problem has been examined and evidenced through cognitive testing." AR 2161. Specifically, "both an account by observers in [Ms. Omar's] life and abnormal findings on the MOCA test show that a memory impairment is present." *Id.*[7] Dr. Zimberoff added that:

> Memory loss to the degree observed is unusual at Mr. Oma[r]'s age. It can be attributed to secondary PTSD-related issues in the brain with the hippocampus, which is known to shrink in persons who have suffered trauma and continue to have PTSD and depression. However, in Ms. Omar's case, it is likely that her significant

---

[7] The Montreal Cognitive Assessment, or "MOCA test," was "designed as a rapid screening instrument for mild cognitive dysfunction" that assesses "attention and concentration, executive functions, memory, language, visuoconstructional skills, conceptual thinking, calculations, and orientation." *Johnson-Tingley v. Berryhill*, No. 1:16-CV-03201-RHW, 2017 WL 7052256, at *5 n.1 (E.D. Wash. Nov. 17, 2017). A score of 26 or above is considered normal, *id.*, and Ms. Omar's score was "1/30, in the profoundly impaired range," AR 2162.

cognitive and memory decline, which is also visible in her poor everyday functioning, has traumatic brain injury origins *in addition to* the psychiatric causes discussed above.

AR 2162 (emphasis added). Though Dr. Zimberoff did base some of her opinions on Ms. Omar's self-reports, *see, e.g.*, AR 2495–96, she also clearly relied on her own observations and examinations, *see, e.g.*, *id.*; AR 786 ("I last saw her in late April 2012 and she was very incapacitated by her mental condition at that time."); AR 905 (January 2013 administration of both Patient Health Questionnaire ("PHQ") and clinical assessment); AR 1295 (May 2014 clinical assessment); AR 1366 (Oct. 2014 PHQ and clinical assessment); AR 2161–64 (describing both self-reports and clinical assessments, including the MOCA test). Based on all this information, Dr. Zimberoff concluded that "[t]he reasons for [Ms. Omar's] disability appear to be a combination of psychiatric . . . and physical" origins, specifically noting Ms. Omar's PTSD. AR 2186; *see also* AR 2161–64, 2176–77, 2749. The ALJ erred by failing to address these portions of Dr. Zimberoff's opinion.

### (b) Dr. Brianne Taylor

In June 2014, Dr. Taylor stated that Ms. Omar has specific physical, mental, and emotional issues that require special accommodations or considerations, including abdominal pain, chronic memory loss, depression/anxiety, and PTSD. AR 1142. Based on these issues, Dr. Taylor concluded that Ms. Omar is unable to participate in work, communicate effectively, and "organize [her]self for independent cooking, cleaning[,] bathing, etc." AR 1143–44.

The ALJ discredited Dr. Taylor's opinion for similar reasons as Dr. Zimberoff's opinion. *See* AR 2222. And for similar reasons, the Court reaches mixed conclusions as to whether the ALJ erred.

First, the ALJ did not err in discounting Dr. Taylor's opinion that Ms. Omar cannot "communicate effectively" or "organize [her]self for independent cooking, cleaning bathing, etc.,"

AR 1142–43, because it was "not consistent with the evidence showing that [Ms. Omar] is able to interact with others when interested, socialize with friends, maintain her household, care for minor children, and perform her own cooking and cleaning," AR 2222. The ALJ cites to the CDIU report, which related that Ms. Omar "was observed interacting/socializing with friends," did so frequently, dressed and bathed herself, and "was fully capable of cooking, cleaning, and caring for the two young children alone." AR 1317, 1322–23. The ALJ therefore provided specific and legitimate reasons for discounting this part of Dr. Taylor's opinion that are supported by substantial evidence. *See* AR 1499–1501.

However, the above observations by Dr. Taylor did not constitute the entirety of her rationale for concluding that Ms. Omar was unable to work based on her impairments. Like Dr. Zimberoff, Dr. Taylor opined that Ms. Omar had "memory loss in setting of prior [traumatic brain injury]," depression/anxiety, and PTSD. AR 1142. Although—as the ALJ observes—the record contains no objective evidence concerning Ms. Omar's traumatic brain injury, AR 2222, this is not the only basis for Dr. Taylor's opinion regarding the causes of Ms. Omar's deficiencies. She also points to depression/anxiety, PTSD, and chronic disorientation—supported by MOCA testing, patient health questionnaires, and other testing and lab reports. AR 1142, 1503. The CDIU report does not undermine Dr. Taylor's opinion about Ms. Omar's inability to work based on these impairments. *See* AR 1500–02; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that claimants need not be "utterly incapacitated to be eligible for benefits" and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"), *superseded on other grounds*, 20 C.F.R. § 404.1502(a). The activities the ALJ identified (i.e., interacting with others when interested, socializing with friends, maintaining the household, caring for minor children, and performing one's own cooking and cleaning) do not necessarily require new training,

following instructions, concentrating for extended periods of time, and memory retention—all of which would be needed in a full-time work setting. *See* AR 1142. The ALJ erred by failing to address this portion of Dr. Taylor's opinion.

### (c) Evidence not cited in ALJ's decision

The Commissioner argues that the ALJ reasonably rejected both Dr. Zimberoff's and Dr. Taylor's respective medical opinions because their assertions regarding Ms. Omar's mental limitations "lacked sufficient objective support." Dkt. No. 18 at 4. In doing so, the Commissioner points to several treatment notes that purportedly undermine their findings relating to Ms. Omar's headaches and ability to perform basic physical and mental activities. *Id.* at 4–5. The ALJ, however, did not include most of these treatment notes in his evaluation of the Dr. Zimberoff's and Dr. Taylor's respective medical opinions. The Court may only affirm an ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Although legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole, here the Court cannot conclude that the various treatment notes cited by the Commissioner render the ALJ's failure to consider the entirety of Dr. Zimberoff's and Dr. Taylor's opinions harmless. Had the ALJ adequately considered these opinions, he may have reached a different conclusion regarding disability. The Court therefore cannot affirm the ALJ.

## B.   Whether the ALJ Erred in the Five-Step Sequential Evaluation

To determine whether a claimant is disabled, an ALJ conducts a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520; *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1991)). In conducting this evaluation, the ALJ "asks five

1    questions in order until a question is answered in such [a manner] that the claimant is conclusively

2    determined disabled or not." *Id.* "The claimant has the burden of proving that she is disabled." *Id.*

3         Ms. Omar contends that the ALJ ignored certain medically determinable impairments at

4    step two, step three, and in the RFC assessment between steps three and four, which in turn led to

5    flawed vocational expert ("VE") testimony and step five determination. Dkt. No. 11 at 1, 12–18.

6    The Court addresses each of these contentions in turn.

7         1.   Whether the ALJ Erred at Step Two

8         "At step two of the five-step sequential inquiry, the Commissioner determines whether the

9    claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at

10   1289–90. An impairment "is not severe if it does not significantly limit [the claimant's] physical

11   or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are

12   "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as

13   walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]" *Id.*

14   § 416.922(b)(1); Soc. Sec. Ruling 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985) ("The severity

15   requirement cannot be satisfied when medical evidence shows that the person has the ability to

16   perform basic work activities, as required in most jobs."). An impairment or combination of

17   impairments is not severe if the evidence only establishes "a slight abnormality that has 'no more

18   than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR

19   85–28, 1985 WL 56856, at *3).

20        Here, the ALJ found Ms. Omar had several "severe" impairments, including "post-

21   traumatic stress disorder, depressive disorder, anxiety disorder, dependent personality disorder,

22   gastritis, fibromyalgia, Sjögren's syndrome, and headache disorder." AR 2214. Ms. Omar

23   contends that the ALJ erred by declining to find that several other conditions—including

24   insomnia/sleep difficulty, osteoporosis with chronic joint and right hip pain, high fracture risk, and

degenerative disc disease—were also "severe" or otherwise unaccounted for in the RFC. Dkt. No. 11 at 12. Ms. Omar cites to assessments indicating degenerative disc disease and scans showing that she is considered osteoporotic, *id.* (citing AR 567, 674–78, 1828, 1834, 1842); these assessments, however, contain no notations regarding Ms. Omar's other alleged impairments. Ms. Omar has also failed to show that the above-listed alleged impairments are so severe that they significantly affect her ability to do "basic work activities," as defined under the applicable regulations. Ms. Omar has therefore failed to meet her burden to demonstrate that the ALJ erred at step two.

       2.  <u>Whether the ALJ Erred at Step Three</u>

"At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P" of 20 C.F.R. Part 404 (the "Listings"). *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listings "describe[] specific impairments of each of the major body systems which are considered severe enough to prevent a person from doing any gainful activity." *Id.* (quotation marks omitted) (citing 20 C.F.R. § 404.1525). The claimant bears the burden of proving whether she has an impairment that meets or equals an impairment in the Listings. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The claimant meets this burden by "present[ing] medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). A claimant cannot rely on "overall functional impact" but must instead demonstrate that the impairment equals each criterion in a Listing. *Id.* at 1176.

Ms. Omar argues that the ALJ erred by declining to find her fibromyalgia to be a medically determinable impairment that met or equaled an impairment in a Listing in combination with at least one other medically determinable impairment. Dkt. No. 11 at 13–14. Because fibromyalgia

is not a listed disability, it is the ALJ's responsibility to determine whether Ms. Omar's fibromyalgia is severe enough to be equivalent to one of the listed disabilities. *See Britton v. Colvin*, 787 F.3d 1011, 1012–13 (9th Cir. 2015) (per curiam). However, while Ms. Omar cites several treatment notes regarding her cognition, pain, and fatigue issues, she does not argue with specificity as to which listing she believes her fibromyalgia meets—either individually or in combination with other impairments. *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."). "[A]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy*, 738 F.3d at 1178 (quoting *Burch*, 400 F.3d at 683). Ms. Omar therefore does not meet her burden of proving that the ALJ erred at step three with regard to her fibromyalgia.

Ms. Omar also contends the ALJ erred at step three by failing to fully analyze her Sjögren's syndrome. Dkt. No. 11 at 14. Sjögren's syndrome is included as an impairment in the Listings; however, an impairment generally only meets the Listings' criteria for Sjögren's syndrome if it involves "two or more organs/body systems" or "repeated manifestations." 20 C.F.R. Part 404, Subpart P, Appendix 1.J.14.10. The ALJ determined that Ms. Omar's impairment did not meet the Listings' criteria for Sjögren's syndrome. AR 2215. Though sparse, the ALJ's analysis did pinpoint exactly why Ms. Omar's impairment failed to meet the Listings' criteria. Ms. Omar consequently had the burden of demonstrating why the criteria was met. Because Ms. Omar failed to do so, she did not meet her burden of proving that the ALJ erred at step three with regards to her Sjögren's syndrome impairment.

1              3.   Whether the ALJ Erred in His RFC Assessment

2              Ms. Omar contends that the ALJ erred in his RFC assessment because he failed to consider

3    several records related to her impairments. Dkt. No. 11 at 15–18. As stated earlier, the ALJ

4    improperly omitted or discounted certain opinions of PA-C Rao, Dr. Zimberoff, and Dr. Taylor

5    without the requisite reasoning. *See supra* Sections III.A.1, A.3. The RFC assessment "must

6    always consider and address medical source opinions" or otherwise "explain why the opinion was

7    not adopted." Soc. Sec. Ruling 96–8P, 1996 WL 374184, at *7 (July 2, 1996); *see also Robbins v.*

8    *Social Sec. Admin.*, 466 F.3d 880, 882–84 (9th Cir. 2006) (citing to SSR 96–8P with approval).

9    Because the ALJ failed to properly evaluate several medical source opinions which evaluated Ms.

10   Omar's "ability to do sustained work-related physical and mental activities in a work setting on a

11   regular and continuing basis," SSR 96–8P, 1996 WL 374184, at *1, the ALJ's RFC assessment is

12   flawed, *see Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n

13   RFC that fails to take into account a claimant's limitations is defective."). The ALJ therefore erred

14   in his RFC assessment. Any VE assessment testimony and step five determination relying on that

15   RFC assessment are consequently flawed as well.

16   **C.   Remedy**

17             Last, Ms. Omar requests that the Court remand this case for an award of benefits based on

18   the ALJ's errors. Dkt. No. 11 at 18. Remand for an automatic award of benefits "is a rare and

19   prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d

20   1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding

21   whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must

22   determine whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence[.]"

23   *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record

24   has been fully developed, whether there are outstanding issues that must be resolved before a

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 20

1    determination of disability can be made, and whether further administrative proceedings would be

2    useful." *Id.* at 1046 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th

3    Cir. 2014)). If the first two steps are satisfied, the Court must determine whether, "if the improperly

4    discredited evidence were credited as true, the ALJ would be required to find the claimant disabled

5    on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credit[s]

6    [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct

7    award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*,

8    773 F.3d at 1101).

9            The first step is satisfied here because the ALJ failed to properly evaluate the opinions of

10   PA-C Rao, Dr. Zimberoff, and Dr. Taylor. However, the Commissioner argues the second step is

11   not met because Ms. Omar's "extensive history of inconsistent behavior, the findings of the CDIU

12   investigation, the generally benign treatment evidence, and the probative State agency reviewing

13   physicians' and psychologists' conclusions" present outstanding issues that would preclude a

14   finding of disability. Dkt. No. 18 at 17.

15           The Court agrees. Though the contents of the CDIU investigation are not sufficient to

16   contravene the entirety of the medical opinions of Dr. Zimberoff and Dr. Taylor, both of their

17   respective opinions remain contradicted by non-examining state agency psychologists Dr. Gerald

18   Peterson and Dr. Dan Donahue, whose opinions the ALJ afforded appropriate weight. *See* AR

19   128–133 (finding Ms. Omar's "presentation [to be] dramatic and included perhaps exaggerated

20   pain behaviors"); AR 151–52 (finding that Ms. Omar "is able to complete a normal week doing

21   simple, short-cycle work" and that "[c]redibility is an issue with this claim"); AR 2221 (giving

22   "some weight to the opinions of State agency psychological consultants Gerald Peterson, Ph.D.,

23   and Dan Donahue, Ph.D., who opined that the claimant is capable of performing simple, routine,

24   work"). It is the ALJ, not this Court, who is responsible for resolving these conflicts between

experts. On remand, the ALJ must properly consider the opinions of PA-C Rao, Dr. Zimberoff, and Dr. Taylor and weigh them against the opinions of the non-examining physicians.

Because the second step is not satisfied, the Court declines to reach step three. *Leon*, 880 F.3d at 1048 (declining to reach step three because "at step two, it [wa]s clear that further administrative proceedings are needed to make a disability determination"). Accordingly, the Court finds that remand for further proceedings is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings pursuant to 42 U.S.C. § 405(g). On remand, the ALJ must (1) reconsider the medical opinions of PA-C Rao, Dr. Zimberoff, and Dr. Taylor, (2) reassess the RFC as necessary, and (3) proceed to step five as appropriate.

DATED this 19th day of September, 2024.

Lauren King
United States District Judge